BRETT N. ANDERSON (11809)
BLACKBURN & STOLL, LC
257 East 200 South, Suite 800
Salt Lake City, Utah 84111
Telephone:     (801) 521-7900
Fax:               (801) 521-7965
E-mail:           bretta@blackburn-stoll.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WELLER RECREATION, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> DOES 1 through 100; OWNER OF WWW.WELLERRECREATION.COM; CLOUDFLARE, INC., a Delaware Corporation, HOSTING CONCEPTS B.V., dba REGISTRAR.EU, a Netherlands entity, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 2:26-cv-502 |

COMES NOW Weller Recreation, LLC and complains against the Defendants, DOES 1 through 100, the owner(s) of www.wellerrecreation.com; Cloudflare, Inc. ("Cloudflare"); and Hosting Concepts B.V. dba as Registrar.eu ("Hosting Concepts") and alleges as follows:

### PARTIES AND JURISDICTION

1.      Weller Recreation, LLC is a Utah limited liability company. Each member of Weller Recreation is domiciled and resides in Utah.

2.      Hosting Concepts B.V. d/b/a Registrar.eu is a Netherlands entity, with a principal place of business at Kipstraat 3c-5c, Rotterdam 3011 RR, Netherlands.

3.      Cloudflare, Inc. is a Delaware corporation, with its principal office in California.

-1-

4.      Does 1 through 100 are various persons or entities that own, control, and or direct the activities of the following website: www.wellerrecreation.com (the "Infringing Site").

5.      The Court has jurisdiction over this action because it arises under the 28 U.S.C. § 1332.

6.      Venue is proper in this District because the events giving rise to the claim occurred in this District, per 28 U.S.C. § 1391(b)(2).

## GENERAL OVERVIEW OF CASE

7.      This is an action seeking damages and injunctive relief relating to the Infringing Site, and the assistance and aid given the Doe Defendants who own, control, and/or direct the activities of the Infringing Site. Cloudflare is an Internet service provider which is liable for aiding and abetting the tortious conduct of these third-party content providers who have infringed, and are continuing to infringe, the rights owned by Plaintiff. Cloudflare's liability arises from its knowledge of the Infringing Site and its continued material contribution to infringement of the Infringing Site by, inter alia, making it easier and faster for internet users to access the infringing website and its content, as well as knowingly making infringing content stored on its data center servers available and accessible to the consuming public after receiving credible notices of actual infringement from the Plaintiff. Moreover, through its provision of Domain Name Service ("DNS"), Cloudflare allows the Infringing Site and its host(s) to conceal their identity from the bona fide owners thereby preventing Plaintiff from stopping the Infringing Site's tortious activities. Cloudflare also fails to terminate the providing of its content delivery services to the customers it knows are using those services to infringe on Plaintiff's rights. Similarly, Hosting Concepts enables the Infringing Site to remain active and accessible to the public. Hosting Concepts also has actual knowledge that the Infringing Site is a fraudulent site, that it is infringing on the rights of the Plaintiff, and that it is being operated

-2-

by one or more tortfeasors, who are defrauding the public. Like Cloudflare, Hosting Concepts not only refuses to take action to take down the Infringing Site, but they, in fact, continue to provide services to the tortfeasors who own, control or conduct activities on the Infringing Site.

8.    Plaintiff has provided written notice to Cloudflare and Hosting Concepts, but both entities have failed and/or refused to respond to those notices by terminating its services to infringers notwithstanding its actual knowledge of the infringements described therein. Defendants continue to profit by providing services to the Infringing Site.

### WELLER RECREATION AND WELLERREC.COM

9.    Weller Recreation, Inc. was organized as a domestic company in the State of Utah on or about December 31, 1996.

10.    On August 25, 2021, Weller Recreation, Inc. filed articles of conversion resulting in the organization of Weller Recreation, LLC.

11.    Weller Recreation, LLC maintains a principal office in the State of Utah at 936 W. 200 S., Kamas UT 84036.

12.    For over two decades (about 25 years), Weller Recreation, LLC (hereinafter "WR") has maintained a website at the following domain: www.wellerrec.com, hereinafter the "**Actual WR Website**." Below are screens shot from the landing page of the Actual WR Website:







13.    The address and phone number match the information maintained by the State of Utah regarding WR, i.e., 936 W. 200 S., Kamas, UT 84036. The phone number is a local number from Kamas, Utah.

14.    About 4-5 months ago, WR noticed that there was an infringing site, i.e., www.wellerrecreation.com, the Infringing Site.  The Infringing Site lists WR's actual address, but with a bogus phone number and with a whole catalog of fake product listings.













15.    The Infringing Website is a fake and a scam, the email address sales@wellerrecreation.com is not an email address associated with WR, and the phone number (435-531-5724) is not associated with WR. The products listed on the Infringing Website are not offered by WR. The entire site is a malicious and fraudulent site. The site is used to perpetrate DNS abuse.

16.    For example and lest there be any doubt, the Infringing Website lists the store hours as Mon-Fri, 8:00 AM to 10:00 PM, Sat 8:00 AM to 8:00 PM, and Sun 8:00 AM to 6:00 PM.



17.     The real store hours for WR are Mon-Fri 8:30 AM to 6:00 PM, Sat 8:30 AM to 3:00 PM, and closed Sundays.

18.     Indeed, Utah Code § 41-3-702 specifically prevents dealerships, like WR, from being open on both Saturday and Sunday. Clearly, the tortfeasors who created the Infringing Site are not savvy to the laws of the State of Utah.

19.     The Infringing Site even offers Apple Pay for the purchase of $31,900.00 forklifts, which is in and of itself evidence of the fraudulent nature of the site. No one uses Apple Pay to buy a forklift, but it certainly enables a quick way to make the fraudulent down payment.

20.     As explained in detail to both Cloudflare and Hosting Concepts, the commonly used website, https://web.archive.org/ (aka Wayback Machine), shows the historical use of www.wellerrec.com (the actual website):



21.     WR's legitimate website became active in about 2001 and has remained active until now. The blue rings below demonstrate continuous use of www.wellerrec.com:



22.     On the contrary, the historical history of www.wellerrecreation.com (the

Infringing Site) shows that it is of recent origin:



23.    According to GoDaddy.com, the Actual WR Website, www.wellerrec.com, is owned by Plaintiff. The same data is confirmed on icann.org.

24.    But, the Infringing Site, www.wellerrecreation.com, is hosted and registered by Cloudflare and Hosting Concepts. The identity of the owner is not disclosed. But, money transferred hands in the creation and hosting of the Infringing Site and both Cloudflare and Hosting Concepts have received and are receiving money to obtain these services.

25.    This Infringing Site was recently registered on May 29, 2025.

26.    The icann.org data confirms this recent orgin and the redacted data regarding the RDAP server evidences the fraudulent ownership of the site:



27.     Plaintiff regularly receives between 5 to 20 calls a week from customers, who are confused by the two competing sites. Some of these customers report having paid money to through the Infringing Site (e.g., for a down payment or shipping charges), only to later find out that the Infringing Site is bogus and a scam. On information and belief, these customers have lost thousands of dollars to the owners of the Infringing Site and Plaintiff has lost corresponding sales.

28.     The Infringing Site is causing real and continuous damage to Plaintiff and to the unsuspecting customers of Plaintiff, who have frequented the Infringing Site and/or attempted to purchase products from the Infringing Site.

29.     Plaintiff alleges that the damage to its company and protected marks exceeds $100,000.00.

30.     Plaintiff provided written demands to the Defendants to take down the Infringing Site or otherwise refrain from enabling the Infringing Site from being posted on the Internet.

31.     Notwithstanding the proof provided to Defendants about the Infringing Site, none of the Defendants have taken any steps to take down the Infringing Site.

32.     Defendants have consistently enabled the Doe Defendants to own, run, and operate the Infringing Site. Defendants enable these infringing sites so that Defendants can earn more money/revenue and increase their overall market share of the Internet industry.

## COUNT 1: TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES, CONVERSION, FRAUD, FRAUDULENT MISREPRENSENTATION, FALSE AND DECEPTIVE PRACTICES (Doe Defendants)

33.     Plaintiff incorporates herein all of the paragraphs set forth in this Complaint.

34.     The Doe Defendants know that they Infringing Site is a scam and is not

letigimately authorized by or related to the Plaintiff.

35.     The Doe Defendants have employed and continue to maintain the Infringing Site to in order to confuse and divert customers of the Plaintiff. They then offer fake products and steal down payments and bogus shipping charges from the customers.

36.     By maintaining the Infringing Site, the Doe Defendants have wrongfully interferred with the legitimate business relationships and expectancies of the Plaintiff.

37.     The Doe Defendants have falsely misrepresented to the public that the Infringing Site is related to and authorized by the Plaintiff.

38.     As evidenced by complaints received by Plaintiff, customers are relying on the false representations portrayed in the Infringing Site, *e.g.*, believing that the site is legitimate, these customes are paying money to the owner of the Infringing Site for products that are not legitimately for sale.

39.     By continually owning and operating the Site, the Doe Defendants have caused and are continuing to cause damage to Plaintiff's protected marks, its goodwill, and its reputation. Customers affected by the scam pulled off by the Doe Defendants will and have lost trust in Plaintiff. The negative effects of the Infringing Site are having a significant monetary impact on Plaintiff, which exceeds $100,000.00, on information and belief.

40.     The marks and protected property rights of the Plaintiff (protected, at a minumum by common law) have been misappropriated by the Doe Defendants. By using the Infringing Site, the Doe Defendants are wrongfully using and retaining the marks and protected property rights of the Plaintiff. The Plaintiff should have exclusive access to the marks and protected property rights, but does not due to the Infringing Site. By wrongfully retaining control over the marks and protected property rights, the Doe Defendants have converted these assets belonging

to Plaintiff.

41.     Utah law prohibits unfair, false and deceptive trade practices, which include, passing off goods and services as those of another, causing the likelihood of confusion or misunderstatning as to the source of goods or services, causing confusion or misunderstanding as to the affiliation with another entity, and advertizing goods of services with the intent not to sell them. *See* Utah Code §§ 13-11-4 and 13-11a-3(1).

42.     The conduct of the Doe Defendants is willful and wanton, and violates both common law and Utah statutory law. Plaintiff is entitled to compensatory damages, punitive damages, statutory damages, and attorneys fees.

43.     The Doe Defendants have caused and are continuing to cause damage to the Plaintiff, in an amount to be proven at trial.

**COUNT 2: AIDING AND ABETTING (Cloudflare and Hosting Concepts)**

44.     Plaintiff incorporates herein all of the paragraphs set forth in this Complaint.

45.     Both Defendants have a continuous presence in the State of Utah, by virtue of their website related activities for the Infringing Site that is visited by Utah consumers and causing harm to a Utah company.

46.     The Doe Defendants have committed the various torts and statutory violations outlined above.

47.     Cloudflare and Hosting Concepts have both received written correspondence from Plaintiff outlining the tortious conduct of the Doe Defendants and demanding that the Infringing Site be taken down.

48.     Cloudflare and Hosting Concepts have knowledge of the tortious conduct of the Doe Defendants.

49.    As described herein, Cloudflare and Hosting Concepts materially aid and abet the Doe Defendants to continue its course of tortious conduct, and thereby Cloudflare and Hosting Concepts enable the Doe Defendants to commit these torts.

50.    The tortious conduct of the Doe Defendants has and is continuing to deceive the consuming public and to violate the rights of Plaintiffs

51.    By knowingly continuing to host and transmit content stored on the network of data centers that infringes upon Plaintiff's rights, and by continuing to allow internet users to access, view, and interact with such malicious content, Cloudflare materially aids and abets the tortious conduct described above.

52.    The Defendants are able to take simple measures to prevent the ongoing tortious conduct by and through the revocation and termination of their services to the Doe Defendants, yet intentionally chose not to in order to not lose the subscriptions or other fees paid by those infringing clients.

53.    Termination of Defendants' services to infringing websites would prevent further damages because absent Defendants' services and assistance, the public would not have access (or at least would not have ready access) to the Infringing Site.

54.    In this regard, with knowledge of the infringement, Defendants facilitate access to the Infringing Site, significantly magnifying the tortious conduct of the Doe Defendants. Furthermore, by providing the Doe Defendants with server space and domain registry credentials (e.g., continued offering of CDN and related services to the Infringing Site and continuing to store cache copies of the infringing content on its servers), the Defendants are aiding and assisting the Doe Defendants' tortious scheme.

55.    Defendants are providing these services after being notified of the fraudulent nature

of the Infringing Site.

56.     Defendants' conduct is analogous to a parking garage that allows auto thieves to store and access their stolen cars in the garage (for a fee), even though the parking garage owner knows that the cars are stolen.

57.     With knowledge of the infringement, Defendants provides customers with a faster and more efficient means by which the Doe Defendants can deliver the infringing content to customers, at the expense of and damage to the Plaintiff.

58.     Furthermore, the Defendants' technical infrastructure deliberately prevents rightsholders (like Plaintiffs) from identifying and blocking pirate sites (like the Infringing Site).

59.     Defendants are able, but fail to take simple measures to stop or reduce the repeated infringement of which they are aware and to which they are aiding and assisting.

60.     Defendants should be liable for aiding, assisting, and shielding abusive domains used for spam, malware, and phishing.

61.     While the Defendants purport to have systemic abuse reporting tools that purportedly forward substantially complaints to the actual hosting provider, the system is designedly slow and unresponsive allowing the fraudulent sites remain active; thus, generating more revenue for the Defendants.

62.     Defendants' lack of action demonstrates that they offer their services without implementing basic "Know Your Customer" (KYC) identity verification. Any level of due diligence would reveal the fraudulent character of the Doe Defendants. The Defendants purposefully turn a blind eye to tortious conduct to enable the revenue stream from the tortfeasors.

63.     As described herein, Defendants substantially assist the Doe Defendants and materially contribute to, profit from, and aid and abet the tortious conduct of the Doe Defendants. As

such, Defendants are liable for the damages caused by the tortious conduct of the Doe Defendants.

### THIRD COUNT: INJUNCTIVE RELIEF (All Defendants)

64. Plaintiff incorporates herein all of the paragraphs set forth in this Complaint.

65. Plaintiff has incurred and is continuing to incur real damages caused by the Infringing Site. Plaintiff's goodwill and reputation are being damaged by the conduct of the Doe Defendants, with the aid and assistance of Cloudflare and Hosting Concepts.

66. The damage suffered by Plaintiff is real and imminent, and ongoing.

67. Plaintiff does not have an adequate remedy at law, since the Infringing Site is a complete scam and a misappropriation of Plaintiff's actual website and property rights.

68. There is no harm to the Defendants to shut down the Infringing Site.

69. The public, moreover, would benefit from having the Infringing Site shut down.

70. Accordingly, the Plaintiff requests a temporary restraining order, preliminary injunction and permanent injunction against the Defendants from hosting, controlling, enabling, and/or facilitating the Infringing Site.

71. The Court should further issue an injunction causing the Defendants to turn over all rights to the Infringing Site to the Plaintiff.

### FOURTH COUNT: RESTITUTION, FORFEITURE AND CONFISCATION

### (Doe Defendants)

72. Plaintiff incorporates herein all of the paragraphs set forth in this Complaint.

73. As described in the First Count, set forth above, the Doe Defendants are operating a malacious, fraudulent site that both harms Plaintiff and the public.

74. The Doe Defendants have no right to maintain a website that falsely creates an appearance of association with and authorization from the Plaintiffs. Indeed, the Infringing Site uses

the name Weller Recreation, uses the logo of the Plaintiff, uses the address of the Plaintiff, and purports to sale the same kind of products as the Plaintiff.

75.    The Doe Defendants have no right to the website: www.wellerrecreation.com.

76.    The rights to the website, the attributions created thereby, and the assocation with Plaitniff, all belong to the Plaintiff.

77.    Plaintiff is entitled to an order that the Doe Defendants must turn-over or restore the website to the Plaintiff, or, altnernatively, that the Doe Defendants have forfeited their rights to the Infringing Site based on their tortious conduct, or, alternatively, that the Doe Defendants' rights in the Infringing Site be confiscated and turned-over to the Plaintiff.

78.    Following entry of such an order, Cloudflare and Hosting Concepts are directed to communicate directly with Plaintiff to complete the turn over of the Infringing Site to Plaintiff, such that all access to and control over the website from the Doe Defendants is cut-off and terminated.

## PRAYER FOR RELIEF

Having complained of the Defendants, Plaintiff prays for the following relief:

1.    A judgment against Defendants for the damages caused to Plaintiff, in an amount to be proven at trial.

2.    A temporary restraining order, preliminary injunction and a permanent injunction enjoining Defendants from hosting, enabling, controlling, aiding, abetting, or facilitating the Infringing Site or otherwise misappropriating Plaintiff's website and protected marks.

3.    For an order requiring the Doe Defendants to turn over, restore, or deliver to Plaintiff all rights, title, and control over and to the Infringing Site.

/ / /

/ / /

4.      For any other relief the Court finds just and equitable under the circumstances.

DATED this 27th day of May, 2026.

BLACKBURN & STOLL, LC

 /S/ Brett N. Anderson
Brett N. Anderson
Attorneys for Plaintiff